DISCIPLINARY COUNSEL *v.* CARLSON.

[Cite as *Disciplinary Counsel v. Carlson,*
111 Ohio St.3d 281, 2006-Ohio-5707.]

(No. 2006–1187—Submitted August 8, 2006—Decided November 15, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Christopher Thomas Carlson of Wadsworth, Ohio, Attorney Registration No. 0062450, was admitted to the Ohio bar in 1993. On October 8, 2003, we suspended respondent's license to practice law for two years for violations of the following Disciplinary Rules: DR 5–103(A) (barring an attorney from acquiring an improper proprietary interest in a client's case) and 5–104(A) (limiting a lawyer's business transactions with a client). *Medina Cty. Bar Assn. v. Carlson,* 100 Ohio St.3d 134, 2003-Ohio-5073, 797 N.E.2d 55.

{¶ 2} On October 10, 2005, relator, Disciplinary Counsel, filed a complaint charging respondent with additional professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in February 2006. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

{¶ 3} Gina Gigandet, formerly known as Gina Morlock, hired respondent in March 2001 to assist her with a domestic-relations matter involving her ex-husband. Respondent told Gigandet that his fee for the visitation issue that she asked him to resolve would be $850, and she paid that fee with money that her father gave her. Gigandet also signed a fee agreement with respondent that called for her to pay an $850 retainer and an hourly rate of $150 for respondent's services.

{¶ 4} Respondent then filed motions on Gigandet's behalf in the Medina County Court of Common Pleas, Domestic Relations Division, and he later

attended one court hearing in the case. Respondent testified at his disciplinary hearing that he "dropped everything" to prepare the motions in March 2001 and then sat at the courthouse "for days and days" waiting for the judge to sign the order setting the hearing date.

{¶ 5} In May 2001, Gigandet's husband died. She then hired respondent to assist her with her husband's estate, and she agreed to pay a $2,500 fee for his services. The estate's assets totaled approximately $53,000, and respondent told Gigandet that he would "really have to fight" to secure $20,000 for her. In return for that effort, respondent advised Gigandet in the summer of 2001 that he would typically charge one-third of the amount that she would receive from the estate, and Gigandet did not question him about that fee at the time.

{¶ 6} In December 2001, the Medina County Probate Court approved the distribution of $20,000 to Gigandet, $20,000 to the decedent's minor daughter, and $2,500 to respondent for legal fees, as well as the payment of various debts of the estate. That same month, when Gigandet went to respondent's office to pick up her $20,000 check, however, respondent reminded her about his claim to one-third of that amount. She assented to his request for that payment, and she transferred the $20,000 check to him in return for a $13,333.33 check that he wrote to her from his client trust account.

{¶ 7} Several months later, in October 2002, respondent prepared and filed a final accounting for the estate. That accounting listed disbursements of $20,000 to Gigandet, $20,000 to the minor daughter of the decedent, and $2,500 to respondent, as well as the payment of various small debts. It did not show that Gigandet had in fact received only $13,333.33 from the estate or that respondent had received the balance of her $20,000 share. Also, under Loc.R. 71.8 of the Medina County Probate Court, any fiduciary wishing to enter into a contingent-fee contract must file a written application with the court, and respondent did not file any such application.

{¶ 8} At his disciplinary hearing, respondent denied that he had entered into—or even discussed—a contingent-fee arrangement with Gigandet on the probate case. Instead, he claimed that the $6,666.67 that he received by accepting Gigandet's $20,000 check and giving her a $13,333.33 check from his trust account was in fact a payment to him for his services on Gigandet's domestic-relations case. He also testified at the disciplinary hearing that Gigandet had agreed in December 2001 to pay the additional fees on the domestic-relations case to compensate him for 60 hours of work that he had devoted to it on her behalf.

{¶ 9} That version of events was disputed by Gigandet. At the disciplinary hearing, she testified that respondent never billed her for any hourly work on the domestic-relations case, and she said that the initial $850 retainer was "the only money he ever asked for" on that matter. According to Gigandet, she agreed to

give one-third of the $20,000 payment to respondent because he had told her in the summer of 2001 that such a fee was customary for the extra work that he claimed he needed to do to secure the $20,000 for her from the probate estate.

{¶ 10} At the disciplinary hearing, respondent testified that he had lost Gigandet's file and he could produce no billing records from her domestic-relations case to document the work that he claimed to have done on it. He also acknowledged that he knew at an early stage of his work on the probate matter that Gigandet was going to receive at least $20,000 from the estate and that he did not need to devote any special efforts to ensure that she would do so. He also admitted that the one-third fee that he collected from Gigandet was unjustified, and he told the panel that "it was greed that drove" him to demand that fee from her. Finally, respondent's testimony that he had spent two hours per day for four or five days waiting outside the chambers of the domestic-relations judge to secure the judge's signature on an order in Gigandet's domestic-relations case was flatly denied by the judge's bailiff, who also testified at respondent's disciplinary hearing.

{¶ 11} The panel found that Gigandet's version of events was believable, whereas respondent's testimony was "false and dishonest." After examining respondent's actions, the panel and the board concluded that respondent had violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 2–106(A) (prohibiting a lawyer from agreeing to charge or collecting an illegal or clearly excessive fee), and 7–102(A)(3) (prohibiting a lawyer from failing to disclose what he is required by law to reveal).

### Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had committed prior disciplinary offenses, acted with a dishonest or selfish motive, made false statements during the disciplinary process, caused harm to a vulnerable victim, and failed to make restitution. BCGD Proc.Reg. 10(B)(1)(a), (b), (f), (h), and (i).

{¶ 13} The one mitigating factor identified by the board was respondent's cooperative attitude during the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(d). The board also noted that the filing of the complaint against respondent in this case in October 2005 prevented respondent from requesting reinstatement to the practice of law after the expiration of the two-year suspen-

sion that we imposed on him in October 2003. See Gov.Bar R. V(10)(A)(4) (allowing an attorney who has been suspended for a definite term to apply for reinstatement only if "[n]o formal disciplinary proceedings are pending" against the attorney).

{¶ 14} Relator recommended that respondent be indefinitely suspended from the practice of law. The panel and the board issued similar recommendations. Respondent has filed no objections to the board's findings or its recommendation.

{¶ 15} We have reviewed the board's report and the record, and we find that respondent violated all of the provisions as described above. In light of the paucity of mitigating evidence, we also agree with the recommended sanction.

{¶ 16} We have imposed indefinite suspensions in similar cases. See, e.g., *Columbus Bar Assn. v. Moesle*, 106 Ohio St.3d 475, 2005-Ohio-5517, 835 N.E.2d 1259 (attorney lied to his client, collected an excessive fee, and engaged in conduct prejudicial to the administration of justice); *Cincinnati Bar Assn. v. Bertsche* (1998), 84 Ohio St.3d 170, 702 N.E.2d 859 (attorney collected fees from his bankruptcy clients without first securing the necessary approval from the bankruptcy court); *Disciplinary Counsel v. Bell* (1984), 15 Ohio St.3d 118, 119, 15 OBR 269, 472 N.E.2d 1069 ("For an attorney to deliberately falsify documents in a judicial proceeding in an attempt to avoid disclosure of exorbitant fees and questionable payments is manifestly contrary to the professional qualities of honesty, justice, and good character").

{¶ 17} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio effective October 8, 2005 (the date when his earlier two-year suspension expired). Respondent is ordered to make restitution to Gina Gigandet in the amount of $6,666.67 within 30 days. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Christopher T. Carlson, pro se.